

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 30, 1995

Ms. Carole Wayland
Midland County Auditor
200 West Wall
Midland, Texas 79701

Opinion No. DM-357

Re: Whether a county auditor may require the county attorney to prepare and submit, for inclusion in the county budget, a projection of revenues and expenditures for the county attorney hot-check fund for the following fiscal year and related questions (RQ-791)

Dear Ms. Wayland:

Your predecessor in office asked whether the county attorney may be required to prepare and submit, for inclusion in the county budget, a projection of revenues and expenditures for the county attorney hot-check fund (the "county attorney's fee fund" or "fund") for the upcoming fiscal year. In a letter to this office, your predecessor summarized his belief that section 111.003 of the Local Government Code authorized Midland County to include the county attorney's fee fund in the county's budget:

> [W]hile the expenditures from this fund shall be at the sole discretion of the County Attorney, those expenditures are nevertheless part of the "[ ... ] expenditures of the county government" [for purposes of Local Government Code section 111.003]. It is clear that Midland County Commissioners Court may not consider the Fund's estimated expenditures for the purpose of modifying expenditure budgets for the general fund. Therefore, I have concluded that the County Attorney should provide the estimates of revenues and expenditures for the succeeding fiscal year for budgeting the Fund, and the Budget Officer and Court must accept such estimates when assembling the County's overall budget.

In the alternative, your predecessor questioned whether section 114.002 of the Local Government Code authorizes the county auditor to require the county attorney to report

his or her projection of revenues and expenditures of the fund for the succeeding year, and whether the official county budget may include the county attorney's estimates.

The Midland County Attorney disagrees with your predecessor's position. You have submitted copies of letters he wrote to your predecessor, in which he claims that section 102.007 of the Code of Criminal Procedure, together with prior opinions of this office, take the fund out of the county's budgeting process. As he said in his April 29, 1994, letter to your predecessor, "[T]his fund is not subject to any type of budget or approval by any body other than the elected County Attorney."

Before we discuss the particular fund at issue here, we believe it will be helpful briefly to describe the county budgeting process. In a county with a population less than 225,001, such as Midland County,[1] the county judge is responsible for preparing the county's budget "to cover all proposed expenditures of the county government for the succeeding fiscal year." Local Gov't Code § 111.003; *see also* 35 DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 15.3, at 532 (Texas Practice 1989). The county auditor may assist the county judge in this endeavor. Local Gov't Code § 111.003. The budget is to list, among other things, "estimated revenues available to cover the proposed budget." *Id.* § 111.004(b)(5).

To aid in preparing the budget, "the county judge may require any county officer to furnish information necessary for the judge to properly prepare the budget." *Id.* § 111.005. An officer who refuses to comply may be penalized in accordance with section 111.012 of the Local Government Code.

After the county judge has completed the preparation of the budget and filed a copy of it with the county clerk, *see id.* § 111.006, the commissioners court holds a public hearing on the proposed budget, *id.* § 111.007(a). At the conclusion of the public hearing, the county commissioners court may adopt the budget, with or without amendments. *See id.* § 111.008. Following final approval of the budget, "the commissioners court may spend county funds only in strict compliance with the budget, except in an emergency." *Id.* § 111.010(b). Nevertheless, the court subsequently may revise the budget "for county purposes." *Id.* § 111.011.

The county attorney's fee fund is amassed pursuant to article 102.007 of the Code of Criminal Procedure. Subarticle (a) authorizes a county attorney to collect a fee if his or her office collects and processes dishonored or forged checks. Any party to the offense is

---

[1] The 1994-95 Texas Almanac lists the population of Midland County as 110,811. T E DALLAS MORNING NEWS, 1994-95 TEXAS ALMANAC 246 (1993).

her office collects and processes dishonored or forged checks. Any party to the offense is liable for the fee. *See* Code Crim. Proc. art. 102.007(b). Subarticle (c) prescribes the amount of the fee the county attorney may collect.[2] Subarticle (f) provides for the county attorney's fee fund:

> Fees collected under Subsection (c) of this article shall be deposited in the county treasury in a special fund to be administered by the county attorney . . . . Expenditures from this fund shall be at the sole discretion of the attorney and may be used only to defray the salaries and expenses of the prosecutor's office, but in no event may the county attorney . . . supplement his or her own salary from this fund.

This office has discussed the county attorney's fee fund in several opinions. We have made clear that the county attorney has exclusive control over monies in the fund. *See* Attorney General Opinion JM-1034 (1989) at 3; *see also* Attorney General Opinion JM-738 (1987) at 3.

While the county commissioners court ordinarily controls an expenditure of county funds, the county attorney need not obtain the commissioners court's approval before expending money from the fund. *See* Attorney General Opinion JM-313 (1985) at 2-3; *see also* Attorney General Opinion JM-632 (1987) at 2 (stating that statutory predecessor to Code of Criminal Procedure article 102.007 carves out exception to statutory provisions conferring control of county money on commissioners court). The county attorney must, of course, administer the fund within the confines of laws applicable to the use of county funds, such as using accounting and control procedures prescribed by the

---

[2]Code of Criminal Procedure article 102.007(c) provides that the amount of the fee may not exceed:

    (1)  $5 if the face amount of the check or sight order does not exceed $10;

    (2)  $10 if the face amount of the check or sight order is greater than $10 but does not exceed $100;

    (3)  $30 if the face amount of the check or sight order is greater than $100 but does not exceed $300;

    (4)  $50 if the face amount of the check or sight order is greater than $300 but does not exceed $500; and

    (5)  $75 if the face amount of the check or sight order is greater than $500.

Under subarticle (d), if the person who is liable for the fee altered the face amount of the check or sight order, the face amount as altered governs for purposes of determining the amount of the fee.

county auditor. Attorney General Opinion JM-313 (1985) at 3; *see also* Attorney General Opinions JM-967 (1988) at 2, MW-584 (1982) at 3, MW-188 (1980). Moreover, the county attorney may not use the fund for purposes other than those listed in section 102.007 of the Code of Criminal Procedure. *See generally* Attorney General Opinion JM-313 (1985) at 3-13 (discussing various proposed uses of county attorney's fee fund).

We believe Attorney General Opinion MW-439 (1982) is particularly relevant to the issue you raise. Attorney General Opinion MW-439 considered whether a criminal district attorney must have competitively bid, pursuant to the statutes requiring counties to competitively bid certain purchases, purchases of supplies and equipment the attorney bought using money from the fund. Upon examining the language of the statute creating the fund, the opinion determined that expenditures from the fund are within the sole discretion of the county, district, or criminal district attorney who has accumulated the fund.[3] Attorney General Opinion MW-439 (1982) at 6. "Thus, by virtue of the express language of the statute, the hot-check fund is explicitly placed beyond the reach of the commissioners court." *Id.*

The relevant competitive bidding statutes, V.T.C.S. articles 1659a[4] and 2368a,[5] required a county commissioners court to competitively bid the purchase of certain supplies and equipment and to award the contract to that bidder who, in the judgment of the county commissioners court, submitted the lowest responsible bid. *Id.* at 1-2. Based on their plain language, the opinion determined that the competitive bidding statutes applied only to certain purchases made by the county commissioners court.[6] *Id.* at 6.

---

[3]Attorney General Opinion JM-313 emphasized that this office based its decision in Attorney General Opinion MW-439 partly on the strong language vesting exclusive discretion in the prosecuting attorney to make purchases out of the hot-check fund. Attorney General Opinion JM-313 (1985) at 2-3.

[4]The legislature repealed V.T.C.S. article 1659a in 1985. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 641, § 11(1), 1985 Tex. Gen. Laws 2377, 2384.

[5]The legislature repealed V.T.C.S. article 2368a in 1987. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1307. The material in article 2368a relating to counties discussed in Attorney General Opinion MW-439 (1982) is now found in chapter 262, subchapter C of the Local Government Code.

[6]One of the relevant competitive bidding statutes, V.T.C.S. article 2368a, applied only to a county acting "through its Commissioners Court." Attorney General Opinion MW-439 (1982) at 6. Accordingly, the opinion continued, that competitive bidding statute was not "triggered" unless a county acted through its commissioners court to make a specific purchase. *Id.* Similarly, another relevant competitive bidding statute, V.T.C.S. article 1659a, explicitly referred only to contracts for the purchase of supplies and materials that the commissioners court awarded. *Id.*

Because a commissioners court is "without any right to administer the [hot-check] fund or to be involved in making expenditures from it," the opinion concluded the competitive bidding statutes did not apply to purchases made with money from the fund. *Id.* To conclude otherwise, this office stated, would allow a commissioners court indirectly to control the fund, and such a result would be contrary to the express language of the statutory predecessor of article 102.007 and, therefore, to the legislature's intent. *Id.* The opinion continued with an example: "A commissioners court could . . . refuse to accept any or all bids in a particular instance and thus interfere with the exclusive right of the designated individuals to administer the fund and to determine when, for what purposes, and under what circumstances expenditures will be made from it." *Id.*

Similarly, Attorney General Opinion JM-313 indicated that the county attorney may use money from the fund to increase the salaries of the county attorney's staff without first receiving the approval of the commissioners court. Attorney General Opinion JM-313 (1985) at 9. Moreover, the opinion continued, the commissioners court may not subsequently reduce the amount the county attorney's staff receives so as to counteract the salary increases. *Id.* Such a response would interfere with the county attorney's "sole discretion" over the fund. *Id.*

In our opinion, to permit a county judge, or the county auditor on behalf of the county judge, to require the county attorney to submit proposed revenues and expenditures for the county attorney's fee fund for the upcoming fiscal year would be tantamount to providing the county commissioners court an indirect means of controlling the fund, *see* Attorney General Opinion MW-439 (1982) at 6, or a means of interfering with the county attorney's exclusive discretion over the fund, *see* Attorney General Opinion JM-313 (1985) at 9. Under the county budgeting statutes, if the county attorney is required to submit to the county judge estimated revenues and expenditures for the use of the fund during the upcoming fiscal year, the estimates, along with the rest of the county budget, would be filed with the county clerk and would be available for public inspection. *See* Local Gov't Code § 111.006. Even if the commissioners court understands that it may not modify the county attorney's proposed budget, the public may comment on it during the public hearing on the proposed budget. *See id.* § 111.007(a). Commissioners may feel compelled to respond to public comments, particularly if they

---

(footnote continued)

This office noted, in Attorney General Opinion JM-967, that the legislature had amended the hot-check fund law and the competitive bidding statutes. Attorney General Opinion JM-967 (1988) at 2. The opinion determined, however, the amendments did not change our conclusion in Attorney General Opinion MW-439 that hot-check fund purchases are not subject to competitive bidding requirements. *Id.*

cannot amend the county attorney's budget for the fund in response to such comments. *See id.* § 111.008. Alternatively, citizens may view the commissioners court's silence or refusal to amend the budget as tacit approval.

In addition, the county budgeting process fosters accountability for the expenditure of county funds. By budgeting appropriations in advance of the start of the fiscal year, the taxpayers may "compel the application of county funds to the purposes for which they were appropriated, . . . prevent the application of such funds to other purposes, and . . . prevent the expenditure of greater sums of money than are necessary for legitimate county purposes." *See* 4 CHESTER JAMES ANTIEAU, INDEPENDENT LOCAL GOVERNMENT ENTITIES § 43.10, at 43-21 (Local Government Law 1990). To determine here that the county attorney must submit a budget for the county attorney's fee fund would suggest that, under section 111.010(b) of the Local Government Code, the county attorney may spend monies from the fund only "in strict compliance with the budget, except in an emergency." Local Gov't Code § 111.010(b). Furthermore, as the county attorney has suggested in a letter to your predecessor, citizens may be led to conclude that the county attorney is irresponsibly using monies in the fund because he or she is not complying with the budget for the county attorney's fee fund.[7]

We accordingly conclude that the county attorney's fee fund is wholly outside of the county budgeting process. We construe section 111.003 of the Local Government Code, which requires the county judge to "prepare a budget to cover all proposed expenditures of the county government for the succeeding fiscal year," to be inapplicable to the county attorney's fee fund because the county commissioners court has no "right to administer the fund or to be involved in making expenditures from it . . . ." *See* Attorney General Opinion MW-439 (1982) at 6. Thus, section 111.003 does not authorize the county judge, or the county auditor on behalf of the county judge, to require the county

---

[7]We gather from the letters you submitted that, because the county attorney refused to submit to your predecessor projected revenues and expenses for the fund, the county auditor included in the county budget his own estimates for the fund. The county attorney summarized the consequences of the fact that the county auditor published a report comparing the county attorney's use of the fund against the county auditor's budget projections:

> The result . . . is a presentation of this fund to the public in a wholly false light. Your report indicates that the County Attorney Fee Account overspent funds in three (3) separate line items, to wit: Travel, Telephone, and Miscellaneous. . . . Your arbitrary assignment of certain monies to arbitrary line items has created the false impression that funds were improperly overspent.

Letter from Mark H. Dettman, Midland County Attorney, to James D. Ross, Midland County Auditor (Nov. 1, 1994).

attorney to submit a budget for use of the county attorney's fee fund for the upcoming fiscal year.

Comparing article 102.007 with article 59.06(d) further bolsters our conclusion. Article 59.06 establishes, in specified circumstances, a special fund in the county treasury into which a county, district, or criminal district attorney must deposit proceeds from the sale of seized or forfeited contraband. Code Crim. Proc. art. 59.06(b), (c)(1). While the attorney representing the state is the administrator of the special fund, *see id.* art. 59.06(a), article 59.06(d) expressly precludes the attorney from expending the proceeds unless the attorney previously has "submitted to the commissioners court" "a budget for the expenditure of the proceeds." *See* Attorney General Opinion DM-246 (1993) at 5-6 (stating that article 59.06(d) requires only that attorney submit budget for expenditure of proceeds; county commissioners court may not evaluate such budget). Clearly, the legislature could have enacted a similar requirement for the expenditure of funds collected pursuant to article 102.007 of the Code of Criminal Procedure, but it has chosen not to. For us to impose such a requirement here would be inappropriate.

We do not believe our conclusion will harm the county's budgeting process in any way. Section 111.004(b)(5) of the Local Government Code stipulates that the budget must estimate revenues sufficient to cover the county's proposed expenditures. Indeed, the purpose of a request to a county officer to submit a statement of expenditures or charges the officer intends to incur in the next fiscal year generally is to aid the county judge, and subsequently the county commissioners court, "in considering the amounts *required for the several corporate objects for which funds should be appropriated.*" 20 C.J.S. § 200, at 430 (1990). As we have suggested previously, the county commissioners court may not use expenditures from the fund to reduce county appropriations to the county attorney's office. *See* Attorney General Opinion JM-313 (1985) at 9. Thus, requiring the county attorney to submit a budget for the county attorney's fee fund for the upcoming fiscal year serves no practical purpose.

We further conclude that section 114.002 of the Local Government Code does not authorize a county auditor to require the county attorney to report his or her projection of revenues and expenditures for the fund for the succeeding fiscal year. Section 114.002(2)(A) requires the county auditor to establish the manner in which a county official annually must report "office fees collect*ed* and disburs*ed.*" (Emphasis added.) Section 114.002(2)(A) clearly refers to office fees the county official has, during the past year, received and expended. We cannot construe such plain language to authorize a county auditor to require of a county official projections of amounts to be collected and to be disbursed in the future.

We do not mean to suggest that the county attorney may not be held accountable for any misuse of the county attorney's fee fund. To the contrary, the county attorney is accountable for the proper use of the fund. *See* Attorney General Opinions JM-967 (1988) at 2, JM-632 (1987) at 2-3, MW-584 (1982) at 3, MW-188 (1980). The auditor is authorized to oversee the county attorney's books and records regarding the fund.[8] *See* Local Gov't Code § 112.006(a). Moreover, the county auditor is required, at least annually, to "fully examine" the county attorney's accounts.[9] *See id.* § 115.0035(b).[10] The county attorney must file all necessary reports concerning the receipt and expenditure of monies to the fund (after the county attorney has received or expended the money). *See id.* §§ 114.041, .042, .045. Finally, as we have suggested previously, the county attorney must administer the fund in accordance with any accounting and control procedures prescribed by the county auditor. *See* Attorney General Opinions JM-967 (1988) at 2, JM-632 (1987) at 2-3, MW-584 (1982) at 3, MW-188 (1980).

---

[8]The county auditor generally oversees the books and records of a county officer who receives or collects money "that is intended for the use of the county or that belongs to the county." Local Gov't Code § 112.006(a).

[9]Section 115.0035(a) of the Local Government Code defines "accounts" as "all public funds that are subject to the control of any precinct, county or district official, including the accounts of law enforcement agencies and the attorney for the state composed of money and proceeds of property seized and forfeited to those officials."

[10]The legislature added section 115.0035 to the Local Government Code in 1989. *See* Act of May 15, 1989, 71st Leg., R.S., ch. 1007, § 1, 1989 Tex. Gen. Laws 4102, 4102-03. Prior to the enactment of section 115.0035, no statute existed that expressly provided "auditing and reporting procedures for accounts held outside of the county treasury." Senate Comm. on Intergovernmental Relations, Bill Analysis, H.B. 960, 71st Leg. (1989). The legislature apparently intended, by the enactment of section 115.0035, to fill this void. Senator Carriker, who sponsored the bill in the senate, explained to the Senate Committee on Intergovernmental Relations that the bill would allow a county auditor to examine accounts not held strictly within the county treasury, which generally are certain accounts held by a county or district attorney. Hearings on H.B. 960 Before the Senate Comm. on Intergovernmental Relations, 71st Leg. (May 9, 1989) (statement of Senator Carriker) (tape available from Senate Staff Services). Although the county attorney is to deposit monies received under article 102.007 of the Code of Criminal Procedure into a special fund in the county treasury, section 115.0035 of the Local Government Code is not limited on its face to accounts outside the county treasury. We therefore believe section 115.0035 applies to the fund.

## S U M M A R Y

The county attorney's fee fund, accumulated pursuant to article 102.007 of the Code of Criminal Procedure, is wholly outside of the county budgeting process. The county judge, or the county auditor on behalf of the county judge, may not require the county attorney to submit a budget for use of the county attorney's fee fund for the upcoming fiscal year.

Section 114.002(2)(A) of the Local Government Code authorizes a county auditor to establish the manner in which a county official must report office fees the official received and expended in the past. The plain language of section 114.002(2)(A) does not permit a county auditor to require a county official to project amounts the official will collect and will disburse in the future.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General